UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MANJIT KAUR JATHOUL,<br><br>    Plaintiff,<br><br>        v.<br><br>HILLARY CLINTON,<br><br>    Defendant. | Civil Action No. 12-492 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Manjit Kaur Jathoul has filed the present action in response to a consular decision to deny her alien husband a United States visa. In suing the Secretary of State, she claims this administrative decision violated her Fifth Amendment due-process right to live with her spouse. Defendant now brings the instant Motion to Dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). In support, Defendant largely relies on the principle of consular non-reviewability. Finding that Plaintiff has failed to assert a constitutionally protected liberty interest that permits judicial review of the consular decision, the Court will grant the Motion and dismiss the case.

**I.    Background**

Plaintiff filed her initial Complaint on March 29, 2012. While Defendant's Motion to Dismiss was pending, she filed an Amended Complaint on July 24. To give her the benefit of the doubt, the Court will consider Plaintiff's Amended Complaint for purposes of Defendant's Motion.

According to the Amended Complaint, which must be presumed true at this stage, Plaintiff initially filed an I-130 Immigrant Petition for her husband, Amarpeet Pal Singh Riar, a citizen of India, on December 27, 2007.  See Am. Compl., ¶¶ 8-9.  The petition was approved on April 1, 2008, and Riar interviewed at a consular office in New Delhi on December 4, 2008.  Id., ¶¶ 9-10.  Following that interview and the processing of additional material submitted by the pair, Plaintiff received notice that Riar's visa application had been formally denied on February 10, 2011.  Id., ¶ 16.  The United States Citizenship and Immigration Services (USCIS) found Riar not admissible under Immigration and Nationality Act § 212 (a)(3)(B) [8 U.S.C. § 1182(a)(3)(B)], which relates generally to "Terrorist Activities."  See id., ¶¶ 16-17.  Plaintiff claims her husband has "never engaged in terrorism" and that her husband was "never given the opportunity to demonstrate the knowledge or lack of knowledge required by several subsections of [§ 1182(a)(3)(B)]."  Id., ¶¶ 19-20.  She claims the USCIS violated her due process rights by "failing to provide a specific reason for denying [her husband's] visa application" and for "impos[ing] an undue burden on [the] fundamental liberty interest" of her marriage.  Id., ¶¶ 21, 24.

Defendant has now moved to dismiss the case for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim.

## II.     Legal Standard

Defendant's Motion invokes the legal standards for dismissal under Rules 12(b)(1) and 12(b)(6).  In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979))

(internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  When sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor.  Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). Although the notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v.

3

Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.

**III.    Analysis**

Plaintiff here is seeking judicial review of the USCIS decision to deny her husband a visa.  Courts, however, do not typically have subject-matter jurisdiction to review such claims because consular officials "have complete discretion over issuance and revocation of visas."  Saavedra Bruno v. Albright, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999).  Matters of policy toward aliens are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."  Id. at 1159 (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 589 (1952)) (internal quotation marks omitted); see also U.S. ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.").

In Saavedra Bruno, a Bolivian national and his U.S.-citizen sponsors brought an action against the Secretary of State to review decisions made by American consulates in Panama and Bolivia regarding his visas.  To determine whether the plaintiff was entitled to judicial review of the consular denial of his visa application, the D.C. Circuit first offered a brief history of American immigration law.  Id. at 1156-57.  The court found that, although there is typically a "'presumption' of judicial review of agency action," id. at 1157, there exists a doctrine of

consular non-reviewability that holds that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." Id. at 1159. This non-reviewability represents a "limitation[] on judicial review unaffected by [Administrative Procedure Act] § 702's opening clause granting a right of review to persons suffering legal wrong from agency action." Id. at 1160 (internal quotations omitted). As a result, the Court held it lacked subject-matter jurisdiction to hear the case. See id. at 1162.

Saavedra Bruno is not, however, dispositive of this case. As Defendant has acknowledged, there is a limited exception to the doctrine of consular non-reviewability when "the denial of a visa implicates the constitutional rights of American citizens." Mot. at 9 (citing Bustamante v. Mukasey, 531 F.3d 1059, 1062 (9th Cir. 2008)); see also Abourezk v. Reagan, 785 F.2d 1043, 1061 (D.C. Cir. 1986) ("Executive has broad discretion over the admission and exclusion of aliens, but that discretion is not boundless."); Udugampola v. Jacobs, 795 F. Supp. 2d 96, 103 (D.D.C. 2011) (holding that exception applies when visa decision "violates a constitutionally protected liberty interest"). Plaintiff bears the burden of establishing that the consular action falls within this exception, see Dunn & Black, P.S. v. United States, 492 F.3d 1084, 1088 (9th Cir. 2007), and, even where the exception applies, judicial review should be "extremely limited." Udugampola, 795 F. Supp. 2d at 102.

Plaintiff here asserts that she falls within the exception because the barring of her husband infringes on her liberty interest in living in the United States with her spouse. Two courts in this District, however, have recently rejected this precise claim. In Udugampola, a Sri Lankan citizen was denied an immigration visa pursuant to 18 U.S.C. § 1182(a)(3)(B), see 795 F. Supp. 2d at 99 – the same provision pursuant to which Riar's application was rejected. Along with his daughter, a United States citizen, and his wife, who had been granted asylum in the

United States, he brought an action seeking judicial review of the decision. See id. at 98. In rejecting the liberty interest claimed by the wife, the court explained:

> The Constitution certainly protects an individual's right to marry and the marital relationship. … Courts have repeatedly held that these constitutional rights are not implicated when one spouse is removed or denied entry into the United States, however. Swartz v. Rogers, 254 F.2d 338, 339 (D.C. Cir. 1958) ("Certainly deportation would put burdens upon the marriage. It would impose upon the wife the choice of living abroad with her husband or living in this country without him. But deportation would not in any way destroy the legal union which the marriage created. The physical conditions of the marriage may change, but the marriage continues. Under these circumstances we think the wife has no constitutional right which is violated by the deportation of her husband."); see also Bangura v. Hansen, 434 F.3d 487, 496 (6th Cir. 2006) ("A denial of an immediate relative visa does not infringe upon [the] right to marry.... [T]he Constitution does not recognize the right of a citizen [spouse] to have his or her alien [spouse] remain in the country," citing Almario v. Attorney General, 872 F.2d 147, 151 (6th Cir. 1989)); Burrafato v. U.S. Dep't of State, 523 F.2d 554 (2d Cir. 1975) (reaffirming that "no constitutional right of a citizen spouse is violated by deportation of his or her alien spouse," citing Noel v. Chapman, 508 F.2d 1023, 1027–28 (2d Cir. 1975)).

Id. at 105.

Similarly, in Mostofi v. Napolitano, 841 F. Supp. 2d 208 (D.D.C. 2012), a United States citizen sued the Secretary of State, among others, after her alien husband was denied an immigration visa. She, too, claimed that this action "violate[d] her Fifth Amendment rights because those actions deprived her of a constitutionally protected liberty interest in freedom of personal choice in matters of marriage and family life without due process." Id. at 211-12 (internal quotation marks omitted). The court disagreed, finding that "plaintiff's constitutional rights are not implicated by defendants' decision to deny her alien spouse entry into the United States." Id. at 212. In sum, "Defendants' denial of [the plaintiff's] visa affected the physical conditions of the marriage … but not the marriage itself." Id. at 212-13 (internal quotation marks omitted).

Plaintiff urges the Court to reject these cases and instead to follow Bustamante, 531 F.3d 1059, in which the Ninth Circuit appeared to find a liberty interest where a United States citizen alleged the consular denial of her alien husband's visa infringed on her constitutionally protected liberty interest in her marriage. Id. at 1062. This Court declines the invitation because in Bustamante "[t]he Ninth Circuit accepted [the plaintiff's] allegation at face value" and did not consider "whether the visa denial actually implicated the plaintiff's constitutional rights." Mostofi, 841 F. Supp. 2d at 212.

In any event, this Court is bound by Swartz v. Rogers, 254 F.2d 338 (D.C. Cir. 1958), which found no violation of a wife's constitutionally protected liberty interest in her marriage when her husband was deported because "deportation would not in any way destroy the legal union which the marriage created." Id. at 339; see also Escobar v. I.N.S., 700 F. Supp. 609, 612 (D.D.C. 1988) (holding that a United States citizen "has no constitutional right to have his or her alien spouse enter or remain in the United States"). Plaintiff acknowledges that "[c]ourts have held that fundamental marriage rights are not implicated" by a visa denial to a spouse, but nonetheless maintains that this "imposes a substantial obstacle in the path of that marriage." See Amend. Compl., ¶ 25. While it may well be true that exclusion of her husband imposes burdens on their married life, the Court cannot find any constitutional violation. As a result, Plaintiff's claims are barred by the doctrine of consular non-reviewability and the Court has no subject-matter jurisdiction to hear the case.

Even if the Court were to find that Plaintiff had a liberty interest that overcame the general principle of consular non-reviewability and conferred jurisdiction, her claim would still fail. Because "Congress has delegated conditional exercise" of its "plenary . . . power to make policies and rules for exclusion of aliens" to the Executive, see Kleindienst v. Mandel, 408 U.S.

7

753, 770 (1972), the Supreme Court has held that judicial review of consular decisions to deny visa applications is significantly circumscribed. See id. Specifically, such decisions need only be based on "a facially legitimate and bona fide reason." Mandel, 408 U.S. at 770; see also Bustamante, 531 F.3d at 1062 (affirming visa denial because reasoning was both facially legitimate and bona fide under Mandel inquiry); Udugampola, 795 F. Supp. 2d at 106 (affirming Mandel standard). Where such a reason is presented, "courts will neither look behind the exercise of that discretion nor test it by balancing its justification against constitutional interests." Udugampola, 795 F. Supp. 2d at 106 (quoting Mandel, 408 U.S. at 470) (internal quotation mark omitted).

      Plaintiff's husband was denied a visa because the consulate determined that he was unable to receive one under 8 U.S.C. § 1182(a)(3)(B). See Am. Compl., ¶ 16. Section 1182(a)(3)(B) is comprised of numerous grounds for inadmissibility on the basis of the applicant's involvement in terrorist activities. That provision, of course, provides a facially legitimate reason for denial of a visa application. See Din v. Clinton, 2010 WL 2560492, at *3 (N.D. Cal. June 22, 2010) ("reference to Section 1182(a)(3) is sufficient to be facially legitimate"); Bustamante, 531 F.3d at 1062 ("statutory basis for inadmissibility" is "facially legitimate reason") (citing 8 U.S.C. § 1182(a)(2)(C)); Udugampola, 795 F. Supp. 2d at 106 ("By providing the applicant the statutory basis for the denial of his visa, the defendants provided a facially legitimate justification.").

      While Plaintiff may desire a more detailed explanation for the consulate's decision, see Am. Compl., ¶ 28 (complaining that a particular subsection of § 1182(a)(3) was not identified), the explanation that her husband failed to qualify for admission under § 1182(a)(3) suffices to confer facial legitimacy. That is because 8 U.S.C. § 1182(b)(3) expressly provides that the

government need not identify "the specific provision or provisions of law under which the alien is inadmissible" where it finds him inadmissible under §§ 1182(a)(2) or (a)(3). 8 U.S.C. § 1182(b)(3) (cross-referencing 8 U.S.C. 1182(b)(1)). As a result, the more general reference to 8 U.S.C. § 1182(a)(3) is adequate. See Udugampola, 795 F. Supp. 2d at 106 ("INA states clearly that the defendants need not provide an applicant even the statutory basis for denial if the reason for denial is based under Sections 212(a)(2) or (a)(3)."); Din, 2010 WL 2560492, at *3 ("granularity" concerning which subprovision of § 1182(a)(3) "need not be provided"). A facially legitimate statutory justification also qualifies as bona fide, unless a plaintiff raises an "allegation of bad faith sufficient to withstand dismissal." Bustamonte, 531 F.3d at 1062; see also Udugampola, 795 F. Sipp. 2d at 106 ("[W]here the consulate provides a statutory basis for denial, a legal challenge to the visa denial must be dismissed unless a plaintiff alleges that the consulate acted in bad faith."); Din 2010 WL 2560492, at *4 ("valid statutory basis also qualifies as a bona fide reason for denial" absent "well-supported allegation of bad faith").

Plaintiff, however, has failed to present such an allegation. Plaintiff's Amended Complaint lacks any facts that might plausibly suggest that the consulate acted in bad faith. See Din, 2010 WL 2560492, at *4 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) ("[W]hile the facts that Din has pled may be 'consistent' with a finding of bad faith; they do not cross the line from possibility to plausibility of entitlement to relief."). As a result, the Court can only conclude that the consulate's explanation is both facially legitimate and bona fide, and its denial of Riar's application thus would survive the Court's scrutiny even if Plaintiff had established reviewability.

**IV. Conclusion**

Since Plaintiff has failed to present a constitutional claim, the doctrine of consular non-reviewability bars this Court from conducting a review.  Defendant's Motion to Dismiss will be granted in a separate Order that accompanies this Memorandum Opinion.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  August 2, 2012